(155 App. Div. 467.)

In re ENGEL.

DOSCHER v. ENGEL.

(Supreme Court, Appellate Division, Second Department. February 28, 1913.)

1. EXECUTORS AND ADMINISTRATORS (§ 35*)—REMOVAL—DISCRETION OF SURROGATE.

Code Civ. Proc. § 2685, provides for a petition for removal of an executor or administrator for grounds stated in subdivisions 1-6. Section 2687 provides that if, on the hearing, the ground alleged is established, the surrogate must revoke the letters, except that in cases under subdivisions 3-5 of section 2685 the surrogate may exercise his discretion. *Held* that, in cases under subdivisions 1, 2, and 6, the surrogate cannot refuse to revoke the letters if the ground alleged is established.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 227-262; Dec. Dig. § 35.*]

2. STATUTES (§ 195*)—CONSTRUCTION—EXPRESSIO UNIUS EXCLUSIO ALTERIUS—INTENT.

The maxim, "Expressio unius exclusio alterius," will not be permitted to defeat the obvious legislative intent where it conflicts with the letter

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the statute, but such intent must be discernible in the context of the statute itself.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §·273; Dec. Dig. § 195.*]

3. EXECUTORS AND ADMINISTRATORS (§ 35*)—REMOVAL—FINDINGS OF FACT— SURROGATE'S COURT—REMOVAL OF EXECUTORS.

On petition for the removal of an executor, the Surrogate's Court must make findings of fact supported by the evidence in harmony with the petition, and make its conclusions of law upon the facts so found.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 227–262; Dec. Dig. § 35.*]

Rich and Hirschberg, JJ., dissenting.

Appeal from Surrogate's Court, Kings County.

Application by Henry Doscher and others to revoke the letters testamentary of Gesine Engel, as executrix of Claus Doscher, deceased. From a decree of the Surrogate's Court of Kings County (74 Misc. Rep. 308, 133 N. Y. Supp. 1105) denying the application, the petitioners appeal. Reversed.

See, also, 152 App. Div. 931, 137 N; Y. Supp. 1119.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, WOODWARD, and RICH, JJ.

Henry F. Cochrane, of Brooklyn, for appellants.

Edward H. Wilson, of New York City, for respondent.

WOODWARD, J. [1] Claus Doscher by his last will and testament nominated and appointed his sons, Henry Doscher, John Doscher, and·Charles Doscher, and his daughter, Gesine Engel, his executors and trustees, and the matter now before us arises upon an application made by the three brothers above named, as executors, trustees, devisees, and legatees under said will, for the removal of Gesine Engel as executrix and trustee. The allegations of the petition set forth matters which, if true, bring the case within the provisions of subdivision 2 of section 2817 of the same Code, but it is to be noted that there is a distinction in the proceedings between those under section 2685 and 2817 of the Code of Civil Procedure which is not generally observed in the discussion of questions of the character of that now before us. In the case of a petition under section 2685 of the Code of Civil Procedure, it is provided (section 2686) that it must set forth the facts and circumstances showing that the case is one of those specified in the preceding section, and upon proof, by affidavit or oral testimony satisfactory to the surrogate, of the truth of the allegations contained in the petition, a citation must be issued according to the prayer thereof. Section 2687 of the Code of Civil Procedure then provides that, upon a return of the citation, "if the objections, or any of them, are established to the surrogate's satisfaction, he must make a decree, revoking the letters issued to the person complained of." After making this positive provision, the section of the Code last above cited provides that "the surrogate may, in his discretion, dismiss the proceedings, upon terms, as to costs, as justice requires, and may allow the letters to remain unrevoked, in either of the following cases," which

are cases arising under subdivisions 3, 4, and 5, and this exception from the general application of the statute would seem to indicate an intention on the part of the Legislature to make it mandatory upon the surrogate to make a decree revoking the letters, under the other. subdivisions of the section.

[2] The maxim, "Expressio unius est exclusio alterius," seems to us to be applicable here; that, the Legislature having especially provided for the cases in which the surrogate may exercise discretion, it necessarily excluded the exercise of discretion in reference to any of the matters arising under any other subdivision of the statute. While this maxim will not be permitted to defeat the obvious legislative intent where it conflicts with the letter of a statute, such intent must, nevertheless, be discernible in the context of the statute itself (Aultman & Taylor Co. v. Syme, 163 N. Y. 54, 57, 57 N. E. 168, 79 Am. St. Rep. 565), and here the letter of the statute is that "if the objections, or any of them, are established to the surrogate's satisfaction, he must make a decree, revoking the letters issued," so that there is no conflict with the letter of the statute. It is plain and unambiguous. It imposes the duty of revoking the letters when the surrogate is convinced of the truth of the allegations of the petition, except in the cases arising under the third, fourth, and fifth subdivisions of section 2685 of the Code of Civil Procedure. As to these the surrogate is given discretionary power, and this necessarily excludes such a discretion under the other subdivisions of the section of the Code now under consideration.

This view of the case was urged before the Surrogate's Court, but the learned surrogate, in an opinion handed down, after stating the proposition, says, "This construction, however attractive, is forbidden by authority," citing several cases. He then adds:

"These cases make it clear that, although a violation of duty or even breach of trust may be found upon the evidence, the letters should not be revoked if the fund or estate is in no danger of being lost."

And then he proceeds to dispose of the question upon the theory that, as there is an accounting pending on the part of the other executors, the respondent may be brought in and charged with any losses which may have resulted because of her misconduct, and the decree dismisses the proceeding upon the merits. Of course, if the construction which we have pointed out above is "forbidden by authority," and the surrogate has the discretionary power to refuse to revoke letters where he is convinced of the truth of matters set forth in the petition and which are within the requirements of subdivision two of section 2685 of the Code of Civil Procedure, then the decree before us should be affirmed, even though the record clearly establishes the fact that the respondent has been guilty of conduct which renders her unfit for the discharge of the duties of the office of an executor, because she appears to have practically abandoned its duties and to have turned them over to her husband, who has intruded himself from the very first in the affairs which the testator had expressly confided to his executors. See Matter of Waterman, 112 App. Div. 313, 315, 316, 98 N. Y. Supp. 583. Let us then examine these authorities, and see how far they for-

bid that construction which appears to be sanctioned by a well-established rule.

The first case relied upon is that of Matter of Monroe, 142 N. Y. 484, 37 N. E. 517. This case had absolutely nothing to do with the question of the proper construction to be put upon section 2685 of the Code of Civil Procedure. The surrogate had revoked letters of administration, the only material ground appearing in the record being that the administrator had foreclosed a mortgage which he held against the estate of the decedent under circumstances which might have called for action on the part of a court of equity, but it was pointed out that the administrator had no control over the real estate; that he had a perfect right to foreclose his mortgage; and that the Surrogate's Court was without equitable jurisdiction, and could not, therefore, be justified in removing an administrator for something which did not come within the condemnation of any known law. This is clearly not a forbidding authority against the contention of the petitioners.

Matter of O'Hara, 62 Hun, 531, 17 N. Y. Supp. 91, is the next case cited. This case did not arise under the provisions of section 2685 of the Code of Civil Procedure. It was an application for the removal of a testamentary trustee under the provisions of section 2817 of the Code of Civil Procedure. In that section it is merely provided that a person beneficially interested in the execution of a trust may present to the Surrogate's Court a written petition, duly verified, setting forth the facts, and praying for a decree removing a testamentary trustee from his trust, and that he may be cited to show cause why such a decree should not be made in a case "where, by reason of his having wasted or improperly applied the money," etc., following the language of subdivision 2 of section 2685 of the Code of Civil Procedure, but there are no provisions relating to this section which prescribe what the Surrogate's Court is to do in reference to the issuing of the citation, or what he shall do upon the return of such citation. In such a case the usual practice would prevail, no doubt, and the Surrogate's Court would be justified in exercising a sound judicial discretion in determining whether there should be a removal of a testamentary trustee. It was in reference to such a situation that the court quoted the rule from Perry on Trusts (4th Ed.) § 276:

"Nor will a trustee be removed for every violation of duty, or even breach of the trust, if the fund is in no danger of being lost. The power of removal of trustees appointed by deed or will ought to be exercised sparingly by the court. There must be a clear necessity for interference to save the trust property. Mere error, or even breach of trust, may not be sufficient. There must be such misconduct as to show want of capacity or of fidelity, putting the trust in jeopardy."

But there is a distinction between the average trust of a specific fund to invest and pay over the income, such investments being made in funds approved by the deed or will, or by statute, and the duties of an executor, who is called upon to close up the multifarious affairs of an estate, and the court in the Matter of O'Hara, supra, merely held that the surrogate had properly exercised its discretion in refusing to remove a trustee who was shown to be entirely solvent, and the investment which had been made in Connecticut with the knowledge and

approval of the principal beneficiary and from which he had derived a substantial income for many years was not likely to result in any loss·to the trust fund. The case is not an authority. against the construction of section 2687 of the Code of Civil Procedure contended for by the petitioners.

Elias v. Schweyer, 13 App. Div. 336, 43 N. Y. Supp. 55, also cited, is another application for the removal of a testamentary trustee, though not under the Code, and the principal question determined upon an appeal from a judgment was that the court erred in·disposing of. the case without the presence. of infant remaindermen under the provisions of a will. So far as it dealt with the question of the removal of the testamentary trustee, it followed the O'Hara Case, supra, and lays down no different rule.

The next case cited is that of Matter of Waterman, 112 App. Div. 313, 98 N. Y. Supp. 583, and this clearly does not forbid the construction contended for by the petitioners. It held that the mere fact that two executors refused to act with a coexecutrix in the presence of her son, whose conduct was offensive, furnishes no ground for their removal, and the reasoning of that case, overruling a decree removing executors, clearly justifies the removal in the case now before us.

Matter of Thieriot, 117 App. Div. 686, 102 N. Y. Supp. 952, was determined upon the right of the surviving partner to close up the affairs of the partnership, and the remarks of the court, based upon Elias v. Schweyer, supra, and the case last above distinguished, were not necessary to the decision, and have no bearing upon the point for which it is cited by the learned surrogate.

Matter of Burr, 118 App. Div. 482, 104 N. Y. Supp. 29, was a case in which the court was called upon to act under the provisions of section 2685 (subdivision 2) and the removal was made, but it appeared upon review that the principal matter on which the surrogate acted was entirely outside of the issues tendered in the petition, and. that the application for removal was not made until after the executor had procured a judicial settlement of his accounts, which showed conclusively that the estate had suffered no detriment from the fact, which was alone within the issues tendered, that the executor had invested moneys of the estate in a manner unauthorized by law. It was there held that the power to remove was given for the protection of the estate and not for the punishment of the executor, but it does not forbid the operation of the ordinary rules of statutory construction.

These are the only cases relied upon by the learned surrogate as forbidding the construction which seems to us demanded by section 2687 of the Code of Civil Procedure, and, as the matter seems to have been disposed of upon the theory that the surrogate had a discretionary power to refuse to remove the respondent, even though he was convinced that the facts alleged in the petition, and which are made a justification for removal by section 2685 of the Code of Civil Procedure, actually existed, we are of the opinion that the decree should be reversed.

[3] The decree of the Surrogate's Court should be reversed and·a new hearing granted, the facts found not being sufficient to determine

the question presented. Indeed, the so-called findings of fact made by the learned surrogate have practically no bearing upon the issues tendered by the petition, while each and every request to find made by the petitioners, although some of them are absolutely uncontradicted, are refused. It is the duty of the Surrogate's Court, in a matter of this kind, to make findings of fact supported by the evidence in harmony with the petition, and to make its conclusions of law upon the facts so found. Matter of Dittrich, 120 App. Div. 504, 105 N. Y. Supp. 303. This has not been done in the present case, though the record extends to two large volumes of evidence and exhibits and seems sufficient to justify the most of the findings requested by the petitioners.

The decree appealed from should be reversed, with costs, and a new hearing should be had in harmony with this opinion.

JENKS, P. J., and BURR, J., concur. RICH, J., reads for affirmance, with whom HIRSCHBERG, J., concurs.

RICH, J. I dissent. Before the removal can be justified, it must be shown by competent conclusive evidence that the interests of the estate, as distinguished from the caprice and wishes of coexecutors, are jeopardized. Matter of Burr, 118 App. Div. 482, 104 N. Y. Supp. 29; Matter of Waterman, 112 App. Div. 313, 98 N. Y. Supp. 583; Matter of Thieriot, 117 App. Div. 686, 102 N. Y. Supp. 952. After a careful examination of the evidence, I am unable to find a condition which would justify the removal, and no fact is found by the learned surrogate under which it could be justified, though it does unfortunately appear that she has upon occasions been coerced in her official actions by her husband. It was said in Matter of Johnson, 15 N. Y. St. Rep. 752, in a similar proceeding:

"The principle governing the disposition of applications such as this is well expressed in this phrase, 'whom the testator will trust, so will the law.' The executor is the confidential agent, solemnly chosen by the testator to execute his wishes as they may be expressed in his will. To this agent the testator confides a most sacred trust. His will must be obeyed by courts and parties within the wholesome rules which have been made in the ages that have passed, by judges and courts of the highest order of ability, aided by vast experience in the practical affairs of men."

The respondent was undoubtedly selected because of the trust and confidence reposed in her, and, if she has been remiss in the discharge of her duties to the extent of incurring a personal responsibility to the estate, that subject may be presented to the surrogate, to be passed upon by him in the proceeding for accounting which is now pending. Matter of Monroe, 142 N. Y. 484, 37 N. E. 517.

I must vote for affirmance.